IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TYLER HACKENTHAL, Y31706, </br></br> Plaintiff, </br></br> vs. </br></br> LT. CHOATE, </br> LT. DALLAS, </br> MR. GORDON, </br> JOHN DOES 1-2. </br></br> Defendants. | Case No. 25-cv-226-DWD |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Tyler Hackenthal, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Pinckneyville Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while at Menard Correctional Center (Menard). (Doc. 1). Plaintiff claims that the defendants violated his rights by performing improper and harassing strip searches and by failing to properly document or investigate his attempts to make a PREA report related to this conduct.

Plaintiff's Complaint (Doc. 1) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon

which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

Plaintiff alleges that in April of 2024 he was an inmate at Menard's medium security unit who was brought to the maximum security unit (he refers to the maximum security unit as "the pit") on a daily basis. (Doc. 1 at 4-5). He explains that during a lockdown, medium security inmates are often used to fill jobs such as dietary and sanitation work. Before entering the pit, inmates are supposed to be searched in an area that has dividers to allow some privacy. (Doc. 1 at 5). He complains that for three or four consecutive days, he and other inmates were searched in a large open area that lacked any dividers or privacy. In this setting, the inmates being searched were in full view of other inmates and of female correctional staff. Plaintiff alleges that the searches were performed in this setting at the direction of Defendant Choate, who was present and in charge. (Doc. 1 at 5).

He explains that on each of these days he was searched by the same two guards—Defendants John Doe 1 and John Doe 2. He complains that these guards made sexually inappropriate comments about his genitals, and that they also rubbed their own groins and manipulated their clothing to display their genitals. (Doc. 1 at 5-6). The comments included direct references to sexual conduct with Plaintiff. He claims that he and other inmates filed grievances around the fifth day of these searches, and at that point the

officers began to use the privacy dividers, and some officers made comments that suggested they had erred in judgment or might be subject to litigation about their conduct.  (Doc. 1 at 6).

Plaintiff filed a PREA report and asked to speak to Defendant Lt. Dallas about it, but he claims that Dallas was unwilling to speak and relayed a message to him to "stop being a cry baby[.]"  (Doc. 1 at 6).  Plaintiff also reported the incident and his concerns about the strip searches to Defendant Gordon during a routine mental health encounter.  Although Gordon documented his concerns in an interview log, Plaintiff alleges that Gordon could have filed a PREA report on his behalf but choose not to do so.  (Doc. 1 at 7-8).  Plaintiff also complained to Defendant Choate about the manner of the searches, but Choate told him he could either comply with the searches or face the possibility of a disciplinary ticket and time in segregation.  Given the circumstances, Plaintiff opted to endure the situation.  (Doc. 1 at 7).

Plaintiff claims that these events caused him extreme distress.  He was in constant fear that he would be sexually assaulted based on the verbal comments and physical gestures by John Does 1 and 2.  He was afraid to sleep, and the sleep deprivation caused him headaches, double vision, severe physical fatigue, and auditory hallucinations.  (Doc. 1 at 7).  Plaintiff seeks compensatory and punitive damages.  (Doc. 1 at 8).

The court designates the following Claim, based on the Complaint:

> **Claim 1:** **Fourth and Eighth Amendment claims against Defendants Choate, and John Does 1 and 2 concerning the April 2024 strip searches conducted without privacy and in a harassing manner;**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## **Preliminary Dismissals**

Plaintiff faults Defendants Dallas and Gordon for their failure to properly document or investigate his PREA report. The Prison Rape Elimination Act facilitates the reporting and processing of claims related to sexual abuse while incarcerated, but it does not create a private cause of action, so Plaintiff does not have an enforceable right associated with PREA. *See e.g.*, Sims v. Doe, 2018 WL 4027632 (S.D. Ind. Aug. 22, 2018); Bentley v. Baenen, 2018 WL 1108701 (E.D. Wis. Feb. 27, 2018) ("The PREA does not create a private cause of action in federal court."); Poslof v. Martel, 2018 WL 3019916, n.5 (S.D. Cal. June 18, 2018) (The PREA "authorizes the reporting of incidents or rape and sexual abuse in prison, but it does not give rise to a private cause of action by a prisoner.").

To the extent that Plaintiff might intend to fault Defendants Dallas or Gordon for failing to protect him or to intervene, his allegations are insufficiently detailed to support any such claim. He describes the strip search problem as persisting for three or four days, but he does not describe at what point in time he notified Dallas or Gordon of the problem. He also explains that around the fifth day, after he and other inmates grieved

the problem, and then the searches started to be done in accordance with more appropriate procedures. Against this backdrop, there was a very short window of time within which he may have plausibly informed Dallas or Gordon, and during which they would have also had an opportunity to intervene. If Plaintiff has more details to supply about their role, and if he believes he can state a plausible claim independent of the PREA, he will need to replead any such claim. In sum, Defendants Dallas and Gordon will be dismissed for now because Plaintiff has failed to plead an adequate claim against them.

## Analysis

Inmates have rights under both the Fourth and Eighth Amendments related to strip searches. *Henry v. Hulett*, 969 F.3d 769, 776-785 (7th Cir. 2020). While prisoners are subject to reasonable searches that are related to or serve a legitimate institutional objective, the Fourth Amendment protects convicted prisoners from searches that are performed in an unreasonable manner, in an unreasonable place, or for an unreasonable purpose. *Id.* at 781. The Eighth Amendment similarly protects convicted prisoners from unnecessary strip-searches that are subjectively intended as a form of "punishment." *Id.* To state a claim under the Fourth Amendment, Plaintiff must allege that a strip-search search was "unreasonable" considering the scope of the particular intrusion, the manner in which it was conducted, the justification for initiating it, and the place in which it was conducted. *Id.* at 784 (citing *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)). To state a claim under the Eighth Amendment, Plaintiff must allege that correctional officers conducted a strip-search that was "motivated by a desire to harass or humiliate" or "intended to humiliate and cause psychological pain." *King v. McCarty*, 781 F.3d 889, 897 (7th Cir. 2015).

Here, Plaintiff's allegations against Defendants Choate and John Does 1 and 2 might fall within the parameters of the Fourth or the Eighth Amendment. Thus, he may proceed on Claim 1 against all three defendants. The Clerk of Court will be directed to add the Warden of Menard to this lawsuit to help identify John Does 1 and 2. <u>To this end, Plaintiff shall file a notice within 21 days giving as much information as he can about the identity of John Does 1 and 2 including physical appearance, rank, and any partial names or nicknames he may have for these two individuals.</u>

## Motion for Recruitment of Counsel

Plaintiff filed a motion for recruitment of counsel with his complaint. (Doc. 2). In his Motion he explains that he is concerned this case will be complex, he has just a GED education, he has very little access to his law library, and he filed his complaint with the help of a jailhouse lawyer. He also indicates that he contacted many attorneys, and he states he provided proof of his efforts, but his motion has no attachments. There is no right to the appointment of counsel in civil matters. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010). When presented with a request to appoint counsel, the Court must consider: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself [.]" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007). The first inquiry "requires the indigent litigant to reasonably attempt to get a lawyer." *Thomas v. Wardell*, 951 F.3d 854, 859 (7th Cir. 2020). Determining whether a plaintiff has made reasonable efforts to recruit counsel himself "is a

mandatory, threshold inquiry that must be determined before moving to the second inquiry." *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021) (citations omitted).

Here, Plaintiff's Motion (Doc. 2) will be denied because although he says he tried to get his own counsel, he failed to attach proof of his efforts. If Plaintiff wishes to renew his motion, he should give copies of at least three pieces of correspondence he exchanged when trying to find his own lawyer. If he does not have copies, he may describe his efforts in as much detail as possible (such as when he sent letters, who he sent them to, and what the letters described about his potential case). The Court also notes that, although it might be true in the future that the case could challenging, it is currently at the earliest stages which are very straightforward. The Court will initiate service of process, and it will guide Plaintiff through the steps to identify the John Doe defendants. Once all parties are served, the Court will give a detailed description of the next steps. Most litigants are able to get through these first steps even if they are not familiar with the law or have access to few materials. Thus, Plaintiff is encouraged to wait to renew his request for counsel until later in the case if possible.

## Disposition

**IT IS HEREBY ORDERED THAT Claim 1** survives initial review against Defendants Choate and John Does 1 and 2. By contrast, the Clerk of Court is **DIRECTED** to **TERMINATE** Defendants Dallas and Gordon because as explained above, Plaintiff failed to state valid claims against these parties.

The Clerk of Court is **DIRECTED** to **ADD** the Warden of Menard to help identify John Does 1 and 2. **Plaintiff must file a Notice within 21 days** giving the best description he can of Defendants John Does 1 and 2.

The Clerk of Court is **DIRECTED** to prepare for Defendants Choate and Warden of Menard (official capacity only for John Does): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant**

**to Administrative Order No. 244, Defendant need only respond to the issues stated in this Merits Review Order.**

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* was granted. *See* [28 U.S.C. § 1915(f)(2)(A)](#).

Plaintiff is **ADVISED** that she is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate her whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. [FED. R. CIV. P. 41(b)](#).

Plaintiff's Motion for Recruitment of Counsel (Doc. 2) is **DENIED** without prejudice.

**IT IS SO ORDERED.**

Dated: March 20, 2025                              /s *David W. Dugan*
                                                    _____
                                                    DAVID W. DUGAN
                                                    United States District Judge

<u>Notice to Plaintiff</u>

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear. As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.